UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:22-cr-114 |
| v. | ) | |
| ROBERTO ESQUIVIAS-SANDOVAL, | ) | **PLEA AGREEMENT** |
| Defendant. | ) | |

The United States of America (also referred to as "the Government"), Defendant, ROBERTO ESQUIVIAS-SANDOVAL, and Defendant's attorney, enter into this Plea Agreement.

## A. CHARGES

1. *Subject Offense.* Defendant will plead guilty to Counts 1 and 7 of the Indictment. Count 1 charges Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 5 kilograms and more of a mixture or substance containing a detectable amount of cocaine, and 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide also known as fentanyl, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). Count 7 charges Illegal Reentry after deportation or removal, in violation of Title 8, United States Code, Section 1326(a).

2. *Charges Being Dismissed.* If the Court accepts this Plea Agreement, Counts 2 through 6 of the Indictment will be dismissed at the time of sentencing. The defendant understands that, even though these counts will be dismissed, all relevant conduct including the conduct that supported the charges in Counts 2 through 6, will be considered by the Court at the time of sentencing.

## B. MAXIMUM PENALTIES

3. *Maximum and Mandatory Minimum Punishments.* Defendant understands that the crime to which Defendant is pleading guilty in Count 1 carries a mandatory minimum sentence of at least ten (10) years in prison and a maximum sentence of life in prison; a maximum fine of $ 10,000,000; and a term of supervised release of at least five (5) years up to life. Count 7 carries a sentence of not more than 20 years; a maximum fine of $ 250,000; and a term of supervised release of up to three (3) years. A mandatory special assessment of $100 per count must also be imposed by the Court. Defendant understands that the Court may not impose a sentence less than the mandatory minimum sentence on Count 1 unless the Government files a motion for substantial assistance under 18 U.S.C. § 3553(e) or unless the Court finds that Defendant qualifies for safety valve under 18 U.S.C. § 3553(f). No one has promised Defendant that Defendant will be eligible for a sentence of less than the mandatory minimum. Defendant understands that these sentences may be imposed consecutively or concurrently.

4. *Supervised Release--Explained.* Defendant understands that, during any period of supervised release, he will be under supervision and will be required to

comply with certain conditions. If Defendant were to violate a condition of supervised release, he could be sentenced to not more than five (5) years in prison, without any credit for time previously served.

5. *Detention.* Pursuant to the Mandatory Detention for Offenders Convicted of Serious Crimes Act (18 U.S.C. § 3143), Defendant agrees to remain in custody following the completion of the entry of his guilty plea to await the imposition of sentence.

## C. NATURE OF THE OFFENSE – FACTUAL BASIS

6. *Elements of Count 1 Understood.* Defendant understands that to prove the offense alleged in Count 1, which is Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 5 kilograms and more of a mixture or substance containing a detectable amount of cocaine, and 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide also known as fentanyl, Schedule II controlled substances, the Government would be required to prove beyond a reasonable doubt the following elements:

(a) on or between the dates identified in the indictment, two or more persons reached an agreement or came to an understanding to manufacture, distribute, or possess with intent to distribute controlled substances;

(b) the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first

reached or at some later time while it was still in effect;

(c) at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding was to manufacture, distribute, or possess with intent to distribute controlled substances; and

(d) the conspiracy involved 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 5 kilograms and more of a mixture or substance containing a detectable amount of cocaine, and 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide also known as fentanyl, Schedule II controlled substances.

7. *Elements of Count 7 Understood.* Defendant understands that to prove the offense alleged in Count 7, which is Illegal Reentry after deportation or removal, the Government would be required to prove beyond a reasonable doubt the following elements:

(a) the defendant is an alien, not a citizen of the United States,

(b) the defendant was previously deported or removed from the United States,

(c) the defendant was found in the United States in the Southern District of Iowa on the date charged, and

(d) the defendant had not obtained consent or permission to return.

8. *Factual Basis.* As a factual basis for Defendant's pleas of guilty, Defendant admits the following:

(a) The defendant, Roberto Esquivias-Sandoval (Esquivias-Sandoval), is not a United States citizen. Esquivias-Sandoval is a citizen of the Country of Mexico. In 2002, Esquivias-Sandoval was convicted in the State of Illinois (Winnebago County) of delivery of 100 to 400 grams of cocaine, an aggravated felony. He was

contacted by Immigration and Customs Enforcement (ICE) at the Illinois State Prison in Statesville, Illinois. At that time, the defendant admitted he was in the USA illegally. The defendant was deported to Mexico on May 3, 2010. On October 25, 2022, Defendant was found in Davenport, Iowa. He did not obtain, and has not obtained, permission from the United States Government to return.

(b) In September of 2021, FBI Special Agents from the Springfield Division Quad Cities Resident Agency were in contact with United States Postal Inspector Service (USPIS) in Phoenix, Arizona in reference to seized packages. On August 19, 2021, USPIS identified a package being sent via US Priority Express mail to an address in Moline, Illinois. This address is linked to Jose Perez-Derezza (Perez).

(c) A search warrant was obtained for the package. Upon execution of the warrant, the package was found to contain a clear plastic package with approximately 104.5 grams of M30 fentanyl pills.

(d) USPIS provided IP/IPV6 log of addresses used to track the package. Review revealed numerous inquiries coming from cities located in Mexico. Additionally, there were IP/IPV6 addresses associated with Rockford and Chicago in Illinois. An administrative subpoena to Comcast revealed an account was registered to an address on North Independence Avenue in Rockford, Illinois. The IPV6 address was registered to Axel Escamilla. An inquiry from the Secretary of State for Escamilla driver's license revealed his residence to be at the same residence on North Independence Avenue in Rockford.

(e) A GPS tracker was placed on to Perez's vehicle to follow his movements. It revealed Perez traveled all over Davenport, Iowa and to Escamilla's residence in Rockford.

(f) A check of past activities at Perez's address in Moline, Illinois revealed a total of (3) packages had been delivered to the address (including the one seized by USPIS in Yuma, Arizona.)

(g) FBI Special Agent David Brown (SA Brown) discovered an active investigation by the Quad Cities Metropolitan Enforcement Group (QCMEG) involving Escamilla and two others, including Esquivias-Sandoval, who had not been identified at that point.

(h) Between September 2021 and December 2021, Nimrick was in communication with Esquivias-Sandoval. On December 6, 2021, arrangements were made by Nimrick to purchase ¼ pound of "ice" methamphetamine from Escamilla and Esquivias-Sandoval. Nimrick called a phone number to arrange a purchase of four ounces of "ice" methamphetamine. During the phone call, Nimrick learned Esquivias-Sandoval was the person who answered the phone call because Escamilla did not speak English well. Esquivias-Sandoval informed Nimrick that they would meet Nimrick at the Hooters restaurant on West Kimberly Road in Davenport, Iowa. That evening, a black 2014 Acura arrived and parked next to Nimrick's vehicle. Nimrick got into the Acura where Esquivias-Sandoval handed Nimrick a bag containing four ounces of "ice" methamphetamine in exchange for $2,000. Esquivias-Sandoval pulled out another bag containing approximately two ounces of cocaine and provided Nimrick one ounce of cocaine in anticipation of future payment. Esquivias-Sandoval further advised that he (Esquivias-Sandoval) could sell "Perc 30" pills to Nimrick (blue counterfeit Percocet pills containing fentanyl) for $4.00 per pill.

(i) Later that evening, Nimrick had contact with Escamilla and Esquivias-Sandoval to arrange a meeting to discuss future narcotics transactions and to purchase the remaining cocaine that Esquivias-Sandoval had previously shown Nimrick. Esquivias-Sandoval informed Nimrick to meet at the same Hooters restaurant in Davenport and upon arrival, Nimrick observed Esquivias-Sandoval and Escamilla sitting at a table in the restaurant. During the conversation there, Esquivias-Sandoval and Escamilla advised Nimrick they wanted a local contact in the Quad Cities to supply narcotics to so they did not have to come down as often. They discussed the prices for cocaine, methamphetamine, and Perc 30 pills. They directed Nimrick to use different code words when referring to different drugs including cocaine, methamphetamine, and Perc 30 pills. "Golf balls" was code for powder cocaine, "Buttons" was code for M-30 Perc fentanyl pills, and "Water" was code for "ice" methamphetamine. Esquivias-Sandoval informed Nimrick that they had an unlimited supply of cocaine, methamphetamine, and Perc 30 pills. They had 50 kilograms of cocaine they want to get rid of fast. After discussing prices and quantities, Esquivias-Sandoval, Escamilla, and Nimrick left the restaurant and walked

to the black Acura. At the vehicle, Esquivias-Sandoval took out an ounce of cocaine from the glove compartment and provided it to Nimrick in anticipation of future payment.

(j) In late December 2021 to mid-January 2022, Nimrick chatted on Snapchat with Escamilla. On January 13, 2022, Nimrick received a phone call from Esquivias-Sandoval who advised he would travel to the North Park Mall in Davenport, Iowa to sell Nimrick four ounces of methamphetamine (using the code word water for methamphetamine) for $2,000. Esquivias-Sandoval also had one to three ounces of cocaine for Nimrick and would "front" one ounce to Nimrick. The transaction did not occur due to conflicting schedules but Nimrick agreed to meet with Esquivias-Sandoval the following week to purchase the four ounces of methamphetamine.

(k) On January 18, 2022, arrangements were made for Nimrick to purchase ¼ pound of "ice" from Escamilla and Esquivias-Sandoval. They agreed to meet in Rockford, Illinois. Upon the Nimrick's arrival, Nimrick contacted them via text message, to which they responded via text, "I'm finishing packing this for you, only 5 minutes." Shortly thereafter Escamilla and Esquivias-Sandoval arrived and provided Nimrick with a ¼ pound of "ice." Esquivias-Sandoval offered to hide the narcotics for the Nimrick and he agreed. They told Nimrick to follow them to their garage located at the residence on North Independence Avenue. There, Esquivias-Sandoval hid the drugs in the air filter compartment of Nimrick's vehicle. Nimrick departed.

(l) On January 25, 2022, arrangements were made for Nimrick to purchase ¼ pound of "ice" from Escamilla and Esquivias-Sandoval. Esquivias-Sandoval text-messaged Nimrick to inquire if Nimrick was "ready for more." Nimrick informed Esquivias-Sandoval that he was, "ready 4 more water." Esquivias-Sandoval confirmed and agreed to meet at the Hooters Restaurant in Davenport, Iowa. Upon the suspects' arrival they met with the Nimrick. They (Esquivias-Sandoval and Escamilla) arrived in the black Acura and parked next to Nimrick's vehicle. Nimrick paid Escamilla $2,000. Esquivias-Sandoval retrieved the 4 ounces of methamphetamine from a concealed hiding spot under the hood of the Acura.

(m) Following this transaction, the black Acura was stopped on

Interstate 80. During the stop, Escamilla was identified through his Illinois driver's license. Esquivias-Sandoval was identified through a Jalisco (Mexico) driver's license he presented in the name of Luis Manuel Zamora Briseno. Prior to this traffic stop, Esquivias-Sandoval was only known by investigators as "Junior" or "Luis."

(n) On February 9, 2022, Esquivias-Sandoval text-messaged Nimrick to see if Nimrick was ready for another purchase. Nimrick confirmed and agreed to meet Esquivias-Sandoval in Rockford at Esquivias-Sandoval's (and Escamilla's) residence on North Independence Avenue. Esquivias-Sandoval provided Nimrick his new phone number via text message. On February 10, 2022, Nimrick, along with surveillance officers, traveled to Rockford to conduct the transaction. Upon Nimrick's arrival, Esquivias-Sandoval was standing outside the detached garage and motioned Nimrick to drive and park inside the garage. Once inside, Esquivias-Sandoval placed approximately eight ounces of methamphetamine in the air filter compartment of the engine of Nimrick's vehicle. Nimrick asked for M-30 fentanyl pills. Esquivias-Sandoval said a shipment of pills had just come in and agreed to sell some to Nimrick. Esquivias-Sandoval said yes, but at a different house. Esquivias-Sandoval got into Nimrick vehicle and directed Nimrick to a residence on Minns Drive in Machesney Park, Illinois. Esquivias-Sandoval went inside the apartment building and then returned with an orange plastic bag containing several M-30 fentanyl pills. Esquivias-Sandoval directed Nimrick to drive back to Esquivias-Sandoval's house. Once at the house, Esquivias-Sandoval sold Nimrick approximately 50 pills (6.4 grams) for $300.

(o) On April 17, 2022, Nimrick was called by Esquivias-Sandoval who informed Nimrick that he would be driving to Davenport, Iowa to pick up $2,000 from Nimrick that was owed from the previous methamphetamine purchase from Esquivias-Sandoval. On April 19, 2022, Esquivias-Sandoval met with Nimrick at the Hooters Restaurant in Davenport, Iowa. Upon arrival, Nimrick observed Esquivias-Sandoval in a white Acura sedan. Esquivias-Sandoval walked to Nimrick's vehicle and handed Nimrick a vacuum sealed bag of approximately four ounces of methamphetamine through the driver's window and then got into Nimrick's vehicle. While in the vehicle, Nimrick paid Esquivias-Sandoval the $2,000. Esquivias-Sandoval told Nimrick to deal directly with him

moving forward and informed Nimrick to purchase larger quantities of methamphetamine in the future, so that Esquivias-Sandoval did not need to travel to the Quad Cities as frequently. Esquivias-Sandoval said he had 35 ounces of "ice" for Nimrick to sell.

(p) On October 4, 2022, Nimrick contacted Esquivias-Sandoval via snapchat. Esquivias-Sandoval advised Nimrick to meet at Auburn Street in Rockford, Illinois. Esquivias-Sandoval arrived and advised Nimrick to follow him and they traveled to the North Independence Avenue residence. They went into the dining room where Nimrick observed on the table a vacuum-sealed package containing about a half kilogram of powder cocaine and another half kilogram of cocaine on a glass cutting plate. Nimrick paid Esquivias-Sandoval $2,000 for two ounces of cocaine. Esquivias-Sandoval then cut approximately two ounces (56 grams) of cocaine from the glass cutting table, weighed it, vacuum-sealed it, and handed it to Nimrick.

(q) On October 25, 2022, Nimrick contacted Esquivias-Sandoval to buy $24,000.00 worth of cocaine. Esquivias-Sandoval said he would travel to Davenport and it was agreed that they meet at Hooters again. At approximately 8:37 p.m., Esquivias-Sandoval arrived at the Hooters restaurant in Davenport. Upon arrival, Esquivias-Sandoval was arrested. More than 500 grams of cocaine was recovered from the trunk of the vehicle Esquivias-Sandoval drove there. The residence in Rockford (Independence Avenue) was searched. Police found $22,000 in cash, scales, a vacuum sealer, packaging material and a half ounce of cocaine.

9. *Truthfulness of Factual Basis.* Defendant acknowledges that the above statements are true. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

10. *Waiver of Rule 410 Rights.* Defendant expressly waives his rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this plea agreement, including under the Factual Basis, are admissible against Defendant. Should Defendant fail to plead guilty pursuant to this plea agreement or move to withdraw his plea or to set aside his conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

11. *Venue.* Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

## D. SENTENCING

12. *Sentencing Guidelines.* Defendant understands that his sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

(a) *The type and quantity of drugs involved in the offense*; the defendant admits that the conspiracy involved more than 4500 grams (4.5 kilograms) of "ice" methamphetamine, 5 kilograms of cocaine, and 40 gams of fentanyl, the exact amount and type of drugs to be attributed to the defendant (above the amount admitted here) will be determined by the court at the time of sentencing based upon U.S.S.G. § 1B1.3;

(b) *Importation of methamphetamine*, the defendant understands that if the court finds the offense involved the importation of methamphetamine he may be subject to a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(5);

(c) *Defendant's role in the offense*, the parties have reached no agreement whether the defendant played an aggravating role in the subject offense within the meaning of USSG § 3B1.1 or a mitigating role in the offense within the meaning of USSG § 3B1.2;

(d) *Maintaining a drug premises*, the defendant understands that his use of property (such as the residence on Independence Avenue in Rockford) as a location for receiving and distributing controlled substances could result in a two-level enhancement for maintaining a drug premises pursuant to U.S.S.G. § 2D1.1(b)(12);

(e) *The nature and extent of Defendant's criminal history* (prior convictions), the defendant understands that his criminal history will be investigated to determine the total number of Criminal History points and his Criminal History Category under the Federal Sentencing Guidelines; and

(f) *Acceptance or lack of acceptance of responsibility.*

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

13. *Acceptance of Responsibility.* The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1. The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise engages in conduct not consistent with acceptance of responsibility. If the

base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely notification to the Government of Defendant's intent to plead guilty.

14. *Presentence Report.* Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

15. *Disclosure of Presentence Investigation Reports.* The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

16. *Evidence at Sentencing.* The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement. Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal

Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

17. *Sentence to be Decided by Judge -- No Promises.* This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties. Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding. Therefore, it is uncertain at this time what Defendant's actual sentence will be.

18. *No Right to Withdraw Plea.* Defendant understands that Defendant will have no right to withdraw Defendant's plea, or if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

**E. FINES, COSTS, AND SPECIAL ASSESSMENT**

19. *Fines and Costs.* Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

20. *Special Assessment.* Defendant agrees to pay the mandatory special assessment of $100 at or before the time of sentencing, as required by 18 U.S.C. §

3013.

## F. LIMITED SCOPE OF AGREEMENT

21. *Limited Scope of Agreement.* This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

22. *Agreement Limited to Southern District of Iowa.* This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## G. WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

23. *Trial Rights Explained.* Defendant understands that this guilty plea waives the right to:

(a) Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

(b) A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

(c) The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

(d) Confront and cross-examine adverse witnesses;

(e) Present evidence and to have witnesses testify on behalf of Defendant, including having the Court issue subpoenas to compel witnesses to testify on Defendant's behalf;

(f) Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

(g) If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

24. *Waiver of Appeal and Post-Conviction Review.* Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge(s), or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law. Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H. VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

25. *Voluntariness of Plea.* Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a) Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

(b) No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

(c) No one has threatened Defendant or Defendant's family to induce this guilty plea.

(d) Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

26. *Consultation with Attorney*. Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

(a) Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

(b) Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

(c) Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I. GENERAL PROVISIONS

27. *Entire Agreement.* This Plea Agreement, and any attachments, is the entire agreement between the parties. Any modifications to this Plea Agreement must be *in writing* and signed by all parties.

28. *Public Interest.* The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

29. *Execution/Effective Date.* This Plea Agreement does not become valid and binding until executed by each of the individuals or their designated representatives shown below.

30. *Consent to Proceed by Video Conferencing.* Defendant consents to any proceedings in this case, to include plea and sentencing proceedings, being conducted by video or telephone technology, if the Court finds further delay would seriously harm the interests of justice. Defendant has had the opportunity to consult with Defendant's attorney about the use of video or telephone technology in this case.

## J. SIGNATURES

31. *Defendant.* I have read all of this Plea Agreement and have discussed it with my attorney. I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No promises have been made to me other than the promises in this Plea Agreement. I have not been

threatened in any way to get me to enter into this Plea Agreement. I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case. I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty. I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

07/29/2023
Date

Roberto Esquivias-Sandoval

32. *Defendant's Attorney.* I have read this Plea Agreement and have discussed it in its entirety with my client. There is no Plea Agreement other than the agreement set forth in this writing. My client fully understands this Plea Agreement. I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of his own free will, with full knowledge of his legal rights, and without any coercion or compulsion. I have had full access to the Government's discovery materials, and I believe there is a factual basis for the plea. I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

07/29/2023
Date

Mark L. Williams
Attorney for Defendant
1003 E. Jefferson Street
Kirksville, Missouri 63501
Tel: (660) 665-7777
Email: mlwilliamsmmw@gmail.com

33. *United States.* The Government agrees to the terms of this Plea Agreement.

Richard D. Westphal
United States Attorney

August 7, 2023
Date

By: Clifford R. Cronk III
Clifford R. Cronk III
Assistant U.S. Attorney
131 East Fourth Street, Suite 310
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: cliff.cronk@usdoj.gov